This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                    **NO. 29,357**

**LISA STEVENS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Gary K. King, Attorney General
Santa Fe, NM

M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Defendant appeals from the Judgment, Sentence, Order Partially Suspending Sentence and Commitment to the New Mexico Department of Corrections (the judgment), convicting Defendant, after a jury trial, of two counts of criminal sexual penetration (CSP) II (felony), two counts of child abuse (no death or great bodily harm), and two counts of contributing to the delinquency of a minor. Defendant raises two issues on appeal, contending that (1) Defendant's convictions for CSP II (felony) must be reversed because the State failed to establish or charge the essential element of unlawfulness; that is, the State established sexual penetration "in the course of a felony" but not any theory of *criminal* sexual penetration; and (2) the district court erred in allowing the State to amend the information after the entire defense was presented addressing the impossibility of the allegations during the time frame charged. We affirm.

**DISCUSSION**

**Factual and Procedural Background.**

The Victim is Defendant's thirteen-year-old daughter J.S. In the fall of 2007 Defendant and her boyfriend, David Padilla (David), who was twenty-four years old at the time, supplied methamphetamine to J.S., and, on two occasions while they were all using the drugs, Defendant requested her daughter to perform fellatio on David, and she did. On the first occasion, the three of them were doing methamphetamine

and Defendant asked her daughter J.S. to give David "head." J.S. testified that she knew what that meant and performed fellatio on David. J.S. also testified she was high and did not really care; her mother, Defendant, did not force her to do it; and she did not think it was any big deal. The second incident took place at the Caves, which is about thirty minutes outside Aztec down a dirt road. Again, J.S. was with her mother and David, and they were doing methamphetamine. Defendant asked J.S. to give David "head," and she did so without being forced.

J.S. was not sure exactly when the incidents occurred. J.S. testified that during the fall of 2007 she would drive around with her mother and David, getting high on methamphetamine. At trial, defense counsel cross-examined J.S. about inconsistencies in her testimony about the dates of the incidents. During pre-trial interviews, J.S. had stated that she thought the events happened between Halloween and Thanksgiving in 2007. At trial, J.S. testified that she thought they happened a week or two apart before Halloween, because her father had reminded her that he found out about David before Halloween and got really mad. J.S. explained that she had earlier testified that the events happened between Halloween and Thanksgiving, but that she was never very sure about the dates because there was a lot going on in that time period in her life and she was getting high all the time. At that time, her parents were getting a divorce, and J.S. was "kind of" living with her mother in Aztec,

but sometimes stayed with her father. J.S. testified that she thought the situation was "messed up," because her mother was involved with David, but J.S. had sexual intercourse with David before he started dating her mother and before J.S. performed fellatio on him. J.S. also testified that when she was with her mother, she would skip school, shoot up or smoke methamphetamine, drink and smoke marijuana, and hang out with her mother. Either Defendant or David would procure the drugs, and they would all get high. J.S. would also drink with her mother, David, and their friend J.D. The State rested after J.S.'s testimony.

Defense counsel had reserved Defendant's opening statement until the State rested its case. Defense counsel raised a single theory of defense: that "[Defendant] was in Phoenix during the time that these incidents allegedly occurred." The defense presented two alibi witnesses, David's sister and David's mother, who testified that Defendant and David arrived in Phoenix right after Halloween and stayed until their arrest on December 10, 2007.

After the defense rested, the State requested that the district court allow it to enlarge the time period when the crimes were committed to, on or about or between October 1, 2007 to November 22, 2007, to "conform to the victim's testimony." Defendant objected to the change, arguing that the State had ambushed the defense by changing the dates, and that the change prevented Defendant from getting a fair trial.

The charging documents stated that the crimes were committed "[o]n or about [or between:] November 12, 2007." At pretrial, the State had requested that Defendant give notice of her intention to claim an alibi with regard to the charges. Defendant had filed written notice of her intent to present alibi witnesses at trial that she was in Phoenix, Arizona at the time the alleged offenses were committed. The defense pointed out that Rule 5-508 NMRA requires the State to notify Defendant of any witnesses it intended to use to rebut her alibi defense, and also argued that the State's amendment of the charging date in effect turned J.S. into an unannounced rebuttal witness. Defense counsel asserted that she had relied on the dates between Halloween and Thanksgiving, throughout her preparation of the alibi defense and stated, "I don't know how I can defend my client, if the State's allowed to continue changing the rules."

The State argued that Rule 5-204(C) NMRA permits the State to amend the criminal information to conform to the evidence presented at trial. The State acknowledged that amendment under Rule 5-204(C) is not allowed when the variance prejudices the Defendant. The State contended, however, that Defendant was not prejudiced because the State had allowed the defense to interview J.S., and had used the inconsistencies in her pretrial and trial testimony to cross-examine J.S. at trial, and call her credibility into question. The State noted that J.S. had been still asserting the

5

November time frame when the State prepared her for testifying the day before trial, and that J.S.'s trial testimony came as "news" to it also.

The trial court noted that J.S.'s trial testimony about a different time frame was stated without a defense objection. The trial court also noted that the original charging date was phrased as "on or about" November 12. The trial court allowed the State to change the dates in the jury instructions. The jury was instructed, on all counts, that it could convict Defendant if it found the events occurred "on, [or] about or between the 1st day of October, 2007, through the 22nd day of November, 2007." The jury convicted Defendant of all charges. On February 26, 2009, the district court filed the judgment. Defendant appeals her convictions for two counts of CSP II (felony).

**Issue 1**

**Whether the jury was properly instructed on the essential elements of two counts of CSP II (felony).**

**Defendant's Arguments**

Defendant contends that because the jury did not find under any theory that the sexual penetrations alleged were unlawful, that an essential element necessary to her convictions is absent and the convictions must be reversed. Defendant points out that the plain language of NMSA 1978, Section 30-9-11(E)(5) (2007) (amended 2009) does not criminalize all sexual intercourse perpetrated in the course of a felony, only all "criminal" sexual intercourse. That is, Defendant contends that she was

6

improperly convicted of CSP II (felony), because the jury made no finding of the essential element of unlawfulness, which is fundamental error requiring reversal of her convictions for these charges. Defendant acknowledges there is controlling New Mexico case law that addresses and holds contrary to Defendant's arguments. *See State v. Maestas*, 2005-NMCA-062, 137 N.M. 477, 112 P.3d 1134, *rev'd on other grounds*, *State v. Maestas (Maestas II)*, 2007-NMSC-001, 140 N.M. 836, 149 P.3d 933. Defendant argues, however, that this Court should not follow *Maestas.*

**Standard of Review and Applicable Law**

As the State notes, by relying on the doctrine of fundamental error Defendant acknowledges she did not preserve the argument that the jury was not properly instructed on the CSP II (felony) charges at trial. Defendant contends that fundamental error occurred because the jury was never instructed that they must also determine that the CSP II was "unlawful," i.e., that a "criminal" sexual penetration had occurred in the course of another felony.

"The doctrine of fundamental error is applied only under extraordinary circumstances to prevent the miscarriage of justice" and "if the circumstances implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Maestas II*, 2007-NMSC-001, ¶ 8 (internal quotation marks and citations omitted). In addition, fundamental error will apply to vacate a

conviction if a defendant appears to be "indisputably innocent" or "where it would shock the conscience to permit the conviction to stand." *Id.* No fundamental error occurred in this case.

**Analysis**

The jury was instructed that in order to convict Defendant of second-degree CSP II (felony) for the two incidents, they must find the following elements beyond a reasonable doubt:

1. [D]efendant caused [J.S.] to engage in fellatio on David[];

2. [Defendant] committed the act during the commission of distribution of a controlled substance to a minor;

3. Distribution of a controlled substance to a minor consist[s] of:

    (a) transferring methamphetamine to [J.S.];
    (b) [D]efendant knew the controlled substance was methamphetamine;
    (C) [J.S.] was 17 years of age or younger;

4. This happened in New Mexico on, [or] about or between the 1st day of October, 2007, through the 22nd day of November, 2007.

As in *Maestas*, the instructions properly required the jury to find that Defendant *caused* J.S. to engage in the sex acts and the acts occurred *during* the underlying felony. *Maestas*, 2005-NMCA-062, ¶ 24. As in *Maestas*, therefore, the requirement that there be a causal connection between the felony (distribution of a controlled substance to a minor) and the sex act, is met. *Id.* Moreover, as in *Maestas*, "[t]his

8

requirement is enough to insure that an accused will not be convicted for engaging in purely consensual [i.e., lawful] sex." *Id.* The description of the sexual conduct that Defendant caused her daughter J.S., a thirteen-year-old girl, to give fellatio to an adult male, was sufficient to satisfy the unlawfulness element. We hold that no fundamental error occurred with regard to the evidence presented and the charging of the jury with regard to Defendant's CSP II (felony) convictions.

As Defendant recognizes, this Court's opinion in *Maestas*, 2005-NMCA-062, answers all of Defendant's contentions in this appeal—against Defendant. Defendant contends that *Maestas* is not controlling on these issues, however, because the Supreme Court granted certiorari and reversed on other grounds without addressing them. Since our Supreme Court did not address these issues, this Court's opinion remains the applicable, controlling law in New Mexico with regard to them.

Defendant also argues that *Maestas* was wrongly decided because it conflicts with both the CSP statute and settled precedent. This Court's opinion in *Maestas*, however, expressly distinguishes the case law that Defendant relies upon as conflicting with this Court's holding in *Maestas*. *See id.* ¶¶ 21-22. Defendant further argues that the holding in *Maestas* is "unsound," because CSP II (felony) is a compound crime like felony murder, and just as felony murder requires proof of the lesser offense of second-degree murder, CSP II (felony) requires proof of the lesser

offense of CSP III. While we agreed in *Maestas* that CSP II (felony) is a "compound crime" like felony murder, we disagreed that proof of the elements of CSP III, defined as all CSP "perpetrated through the use of force or coercion" under Section 30-9-11(E), is necessary in order to prove CSP II (felony). *Maestas*, 2005-NMCA-062, ¶¶ 16-17. The express language of Section 30-9-11(E), which defines CSP II, provides that "force or coercion" is an element of three of the alternative grounds for CSP II. *See* § 30-9-11(E)(1), -(3), and -(4). "Force or coercion" is not an element of the other three alternative grounds for CSP II. *See* § 30-9-11(E)(2) (when perpetrated on an inmate); § 30-9-11(E)(5) (in the commission of any other felony); § 30-9-11(E)(6) (the accused is armed with a deadly weapon); *see also Maestas*, 2005-NMCA-062, ¶ 20. Thus, we concluded in *Maestas* that the express words of Section 30-9-11(E) indicate that the Legislature did not limit CSP II only to felonies involving force or coercion. *Maestas*, 2005-NMCA-062, ¶ 26. With regard to CSP II (felony), Section 30-9-11(E)(5), the statute simply requires that the CSP be caused by the defendant "in the commission of any other felony." *Id.* Thus, in *Maestas*, we specifically held that CSP II (felony) does not require proof of the lesser offense of CSP III.

We decline to revisit *Maestas* for any of the reasons that Defendant asserts. In this case, we hold that no fundamental error occurred with regard to Defendant's CSP II (felony) convictions.

10

**Issue 2**

**Whether the district court erred in allowing the State to amend the criminal information dates to conform to the Victim's trial testimony after Defendant had presented an alibi defense relating to the date charged in the original criminal information.**

**Defendant's Arguments**

On appeal, Defendant contends that she was unfairly prejudiced in this case because she relied on the charging period contained in the criminal information to prepare her alibi defense. Defendant points out that the State did not amend the charges until after the defense rested and did not amend the actual information until after trial in order to "sidestep" Defendant's alibi defense. Since Defendant's entire defense case, her attorney's opening statement, and the testimony of the two defense witnesses, were addressed to the dates of the offenses set forth in the criminal information, the amendment deprived Defendant of the fair trial that she had prepared.

**Standard of Review and Applicable Law**

This case requires us to interpret and apply Rule 5-204(C) and Rule 5-508 (B). Our review is de novo. *See State v. Roman*, 1998-NMCA-132, ¶ 8, 125 N.M. 688, 964 P.2d 852. Rule 5-204(C) provides as follows:

> C.    **Variances.** No variance between those allegations of a complaint, indictment, information or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant unless such variance prejudices substantial rights of the

12

defendant. The court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence. If the court finds that the defendant has been prejudiced by an amendment, the court may postpone the trial or grant such other relief as may be proper under the circumstances.

Rule 5-508(B) provides as follows:

> B. **Content of notice.** A notice of alibi or entrapment shall contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and, as particularly as known to defendant or the defendant's attorney, the names and addresses of the witnesses by whom the defendant proposes to establish an alibi or raise an issue of entrapment. *Not less than five (5) days after receipt of defendant's witness list or at such other time as the district court may direct, the district attorney shall serve upon the defendant the names and addresses, as particularly as known to the district attorney, of the witnesses the state proposes to offer in rebuttal to discredit the defendant's alibi or claim of entrapment at the trial of the cause.*

(Emphasis added.).

In *State v. Marquez*, the district court granted the State's motion to amend the indictment, which had charged the events as occurring "on, about or between the Spring 1992, and/or the Summer, 1992[,]" to conform to the victim's testimony that she was nine years old when the alleged incidents occurred and that the victim turned nine years old on June 23, 1993, rather than on June 23, 1992. 1998-NMCA-010, ¶ 18, 124 N.M. 409, 951 P.2d 1070. The district court allowed the amendment because the defendant could reasonably anticipate from the indictment what the nature of proof against him would be, he knew the identity of the alleged victim, and he was aware

13

of the mistake in the date from the beginning of the trial. *Id.* ¶ 21. When the district court allowed the amendment, the court offered the defendant a continuance, which the defendant did not accept. *Id.* In affirming the district court, this Court observed that "[t]he remedy afforded for prejudice by an amendment is to 'postpone the trial or grant such other relief as may be proper under the circumstances.'" *Id.* (citation omitted). This Court also observed that, "[a]dditionally, [the d]efendant did not rely upon an alibi defense." *Id.*

In *State v. Dombos*, the district court allowed the State to amend the indictment midway through trial on the kidnaping, attempted CSP, and battery charges from "on or between February 9, 2004, and February 18, 2004," and "on or about February 19, 2004[,]" to "on or between February 1 and February 19[]" for all of the charges. 2008-NMCA-035, ¶ 24, 143 N.M. 668, 180 P.3d 675. In affirming the district court, we concluded that the defendant knew the nature of the charges, the identity of the victim and that all the charges were alleged to have occurred during the period of time the defendant and the victim lived together—that is, between February 1 and February 20, 2004. *Id.* ¶ 26. We also noted that "[n]othing in [the d]efendant's cross-examination of the witnesses at trial or in the presentation of his case relied upon the specific dates charged in the earlier indictment." *Id.* Accordingly, in *Dombos*, we

14

affirmed the district court's decision to allow the State to amend the dates in the indictment. *Id.*

**Analysis**

Defendant distinguishes *Marquez* from the facts of this case, noting that Defendant was prejudiced because she did rely on an alibi defense; indeed it was her "entire defense." Defendant distinguishes *Dombos* on the basis that Defendant was prejudiced by the amendment because her defense to the charges in the indictment *did* rely on the dates charged. Defendant also points out that the amendment to the charges was made after the defense rested, which "changed the playing field after the match was played and deprived [Defendant] of the fair trial for which she had prepared." We are not persuaded.

Significantly, in this case, defense counsel delayed her opening statement, relying on an alibi defense, until after the State rested. At that point, defense counsel knew from J.S.'s trial testimony (that the two incidents had occurred before Halloween in 2007), was inconsistent with the time period Defendant had indicated in pretrial interviews (that the two incidents had occurred between Halloween and Thanksgiving 2007). Rather than object and request a continuance, however, defense counsel attempted to use the inconsistencies to undermine J.S.'s credibility to the jury. *See Marquez*, 1998-NMCA-010, ¶ 21 (observing that Rule 5-204(C) specifically states

15

that "[t]he remedy afforded for prejudice by an amendment is to 'postpone the trial or grant such other relief as may be proper under the circumstances'") (citation omitted). Thus, defense counsel proceeded to cross-examine J.S. about the inconsistencies between her trial testimony and pre-trial interviews, and then presented an opening statement and defense witnesses that gave Defendant an alibi defense to J.S.'s pretrial testimony about the dates. *See, e.g.*, *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127 (stating that counsel is presumed competent); *State v. Peters*, 1997-NMCA-084, ¶ 40, 123 N.M. 667, 944 P.2d 896 (stating that whether to object to evidence is a matter of trial tactics, and failure to object does not establish ineffective assistance); *see also Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 ("On appeal, we will not second guess the trial strategy and tactics of the defense counsel." (internal quotation marks and citation omitted)).

Thus, the jury was presented with Defendant's theory that J.S. had fabricated the incidents due to her inability to remember when they occurred, and that J.S. had fabricated and/or changed her pretrial testimony due to Defendant's alibi defense. The jury apparently weighed the inconsistencies and accepted J.S.'s explanations for her confusion about the dates and the reasons that she changed her testimony. *See State v. Ryan*, 2006-NMCA-044, ¶ 20, 139 N.M. 354, 132 P.3d 1040 (concluding that "[i]t

16

is the fact[]finder's prerogative to weigh the evidence and to judge the credibility of the witnesses").

We are not persuaded that the alibi defense was Defendant's entire defense. Moreover, Defendant proceeded with fabrication and alibi defenses that the jury rejected, rather than objecting to the change in testimony and requesting a continuance, pursuant to Rule 5-204(C). In addition, when the State moved to change the charging dates to conform to J.S.'s trial testimony, the State indicated it was also surprised at the change. As such, we are not persuaded that J.S. was an "unannounced rebuttal witness," pursuant to Rule 5-508, to Defendant's notice of alibi defense. Under the circumstances, we cannot say that Defendant was prejudiced, "ambushed, or "sandbagged" by the State's motion, and we cannot say that the district court denied Defendant a fair trial by allowing the State to change the charging dates to conform to J.S.'s trial testimony after Defendant had presented her case.

**CONCLUSION**

We affirm Defendant's convictions for CSP II (felony) and the district court's judgment.

17

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

18