IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMSC-011

Filing Date: April 7, 2014

Docket No. 32,860

STATE OF NEW MEXICO,

Plaintiff-Respondent,

v.

LISA STEVENS,

Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
John A. Dean, Jr., District Judge

Jacqueline L. Cooper, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Respondent

OPINION

DANIELS, Justice.

I.     INTRODUCTION

{1}     We granted certiorari to review Defendant Lisa Stevens' convictions for second-degree criminal sexual penetration during the commission of a felony, child abuse, and contributing to the delinquency of a minor. The convictions were based on two separate incidents in which she directed her thirteen-year-old daughter to perform oral sex on Defendant's twenty-four-year-old boyfriend after the three injected methamphetamine

1

together.

**{2}** Addressing a precedential legal issue, we clarify that simply causing another person to engage in otherwise lawful sexual intercourse at the same time a felony is being committed does not constitute the crime of criminal sexual penetration during the commission of a felony. Accordingly, we disapprove any language to the contrary in *State v. Maestas*, 2005-NMCA-062, ¶ 26, 137 N.M. 477, 112 P.3d 1134, *rev'd on other grounds*, *State v. Maestas* (*Maestas II*), 2007-NMSC-001, ¶¶ 2, 27, 140 N.M. 836, 149 P.3d 933.

**{3}** While we also hold that the jury should be instructed that the crime of criminal sexual penetration during the commission of a felony requires the commission of unlawful sexual activity with the victim of the felony, we conclude that the unobjected-to deficiency in the instructions did not constitute fundamental error in the circumstances of this case where Defendant's guilt was clear. In the absence of any error that would justify reversal, we affirm Defendant's convictions.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

**{4}** Defendant was charged by criminal information with two counts of causing criminal sexual penetration during the commission of the felony of distribution of a controlled substance to a minor, contrary to NMSA 1978, Section 30-9-11(E)(5) (2007, amended 2009) (CSP II-felony). The predicate felony for CSP II-felony was distribution of a controlled substance to a minor, punishable as a second-degree felony by NMSA 1978, Section 30-31-21(B)(1) (1987). The charges also included two counts of child abuse, contrary to NMSA 1978, Section 30-6-1(D)(1) (2005, amended 2009); and two counts of contributing to the delinquency of a minor, contrary to NMSA 1978, Section 30-6-3 (1990).

**{5}** At trial Defendant's daughter testified that in the fall of 2007, while her parents were going through a divorce, she would often skip school and join Defendant and Defendant's boyfriend to get high on methamphetamine that Defendant and the boyfriend provided. The daughter also testified that Defendant originally introduced her to the drug.

**{6}** On two separate occasions a week or two apart in the fall of 2007 when the daughter, Defendant, and the boyfriend were injecting methamphetamine together, Defendant told her daughter to perform oral sex on the boyfriend. The daughter testified that, although Defendant did not force her to perform the oral sex on either occasion, she complied with Defendant's direction because she was "high [and] didn't really care." Soon after those two incidents, Defendant and the boyfriend moved to Phoenix, Arizona.

**{7}** When questioned at trial about the dates of the two oral sex incidents, the daughter explained that, although she had originally estimated that they happened sometime between Halloween and Thanksgiving of 2007, she was unsure exactly when they occurred. After remembering that her father confronted her about the two incidents on Halloween of 2007, after he had learned about them, she realized the incidents must have actually occurred

2

before instead of after Halloween. Her father became angry about what had happened, and the daughter ended up not being allowed to go to Phoenix with Defendant and the boyfriend as she had planned to do. On cross-examination at trial the daughter testified that it was difficult to recall the exact dates because she had been getting high so much during that time, but her best estimate was that it "probably happened like a couple of weeks before Halloween."

**{8}** Neither Defendant nor the boyfriend took the stand to challenge the substance of the daughter's testimony, and Defendant relied instead on an alibi defense and a general credibility attack against the daughter. After the daughter testified and the State rested its case in chief, Defendant called the boyfriend's sister and mother, the only defense witnesses, to establish that Defendant and the boyfriend were in Phoenix from November 2, two days after Halloween, to December 10, 2007, eighteen days after Thanksgiving.

**{9}** After the defense rested, the State asked the court to allow an amendment to the allegations in the original criminal information to conform to the daughter's trial testimony that the two incidents probably occurred in October. Over the objection of Defendant, the trial judge allowed the amendment, which revised the alleged date range of the offense from "[o]n or about November 12, 2007" to "on, about or between the 1st day of October, 2007, through the 22nd day of November, 2007" in the charging documents and the resulting jury instructions.

**{10}** Defendant did not submit any requested jury instructions and made no objection to the instructions offered by the State or given by the court other than the objection to the change in terms describing the time frame when the offenses allegedly occurred.

**{11}** The jury found Defendant guilty on all counts. She was sentenced to fifteen years imprisonment for each of the two convictions for CSP II-felony to run consecutively with each other and concurrently with the remaining sentences of three years for each of the two child abuse convictions and eighteen months for each of the two contributing to the delinquency of a minor convictions. All but the first fifteen years of imprisonment were suspended.

**{12}** Defendant appealed her convictions to the Court of Appeals on two grounds: (1) that the convictions for CSP II-felony resulted from fundamental error because the jury was not instructed that the State had to prove that the sexual activity occurring during the commission of a felony was otherwise "criminal" and (2) that allowing the State to amend the description of the dates of the offenses during trial was reversible error. *See State v. Stevens*, No. 29,357, mem. op. at 2, 6-7 (N.M. Ct. App. Jan. 18, 2011) (nonprecedential). The Court of Appeals affirmed the convictions in an unpublished memorandum opinion, declining to reconsider its holding in *Maestas* that a conviction for CSP II-felony can be based on otherwise lawful sex occurring during the commission of a felony. *Stevens*, No. 29,357, mem. op. at 10, 17. We granted certiorari to review both of Defendant's issues.

## III.    DISCUSSION

**{13}**    The jury was instructed that in order to convict Defendant of the crime of CSP II-felony, as charged in each of counts 1 and 2, the State had to prove beyond a reasonable doubt the following elements:

1.    The defendant caused [the daughter] to engage in fellatio on [the boyfriend];
2.    The defendant committed the act during the commission of distribution of a controlled substance to a minor;
3.    Distribution of a controlled substance to a minor consist[s] of:
    (a)    transferring methamphetamine to [the daughter];
    (b)    [t]he defendant knew the controlled substance was methamphetamine;
    (c)    [the daughter] was 17 years of age or younger;
4.    This happened in New Mexico on, about or between the 1st day of October, 2007, through the 22nd day of November, 2007.

**{14}**    We address first the propriety of the elements portions of the instruction, then whether the elements description constituted fundamental error requiring reversal on appeal in the absence of proper preservation of the issue in the district court, and finally whether the amendment to the date description was reversible error.

### A.    The Offense of Criminal Sexual Penetration Committed During the Commission of a Felony Requires Proof of Unlawful Sexual Conduct Caused by the Commission of a Felony Against the CSP Victim

**{15}**    "'In determining what is or is not an essential element of an offense, we begin with the language of the statute itself, seeking of course to give effect to the intent of the legislature.'" *State v. Swick*, 2012-NMSC-018, ¶¶ 56, 58, 279 P.3d 747 (citation omitted) (reversing a second-degree murder conviction for fundamental error because a missing element in the jury instructions may have led to an unjust conviction). It is "'the high duty and responsibility of the judicial branch of government to facilitate and promote the legislature's accomplishment of its purpose.'" *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022 (citation omitted). Although we look first to the language of the statute, we will reject "a formalistic and mechanical statutory construction when the results would be absurd, unreasonable, or contrary to the spirit of the statute." *Id.* ¶ 9-10.

**{16}**    The provisions of the criminal sexual penetration statute relevant to the issue before us are,

    A.    Criminal sexual penetration is the unlawful and intentional causing of a person to engage in sexual [acts]
        . . . .

4

E.    Criminal sexual penetration in the second degree consists of all criminal sexual penetration perpetrated:

(1)    by the use of force or coercion on a child thirteen to eighteen years of age;

(2)    on an inmate confined in a correctional facility or jail when the perpetrator is in a position of authority over the inmate;

(3)    by the use of force or coercion that results in personal injury to the victim;

(4)    by the use of force or coercion when the perpetrator is aided or abetted by one or more persons;

(5)    in the commission of any other felony; or

(6)    when the perpetrator is armed with a deadly weapon.
. . . .

F.    Criminal sexual penetration in the third degree consists of all criminal sexual penetration perpetrated through the use of force or coercion not otherwise specified in this section. . . .

G.    Criminal sexual penetration in the fourth degree consists of all criminal sexual penetration:

(1)    not defined in Subsections D through F of this section perpetrated on a child thirteen to sixteen years of age when the perpetrator is at least eighteen years of age and is at least four years older than the child and not the spouse of that child; . . .
. . . .

Section 30-9-11 (2007).

**{17}**    In *Maestas*, 2005-NMCA-062, our appellate courts first undertook the judicial task of determining the essential elements of CSP II-felony, enumerated at that time as Subsection (D)(5) of Section 30-9-11. Maestas's convictions arose from "allegations that he accepted sexual favors from Victim in exchange for leniency in the resolution of charges against Victim in municipal court" where he was a judge. *Id.* ¶ 2. He was convicted both of the felony of requesting or receiving something of value conditioned upon or given in exchange for promised performance of an official act, in violation of NMSA 1978, Section 10-16-3(D) (1993, amended 2011) of the Governmental Conduct Act, and of criminal sexual penetration during the commission of that felony, in violation of Section 30-9-11(D)(5) (2003). *Maestas*, 2005-NMCA-062, ¶ 1.

**{18}**    Maestas, whose theory of the case was that the adult victim had enticed him to engage in consensual sex acts, objected to the failure of the jury instructions to clarify that simply having otherwise lawful consensual sex during the commission of a felony was not criminal sexual penetration. *Id.* ¶¶ 2, 13. The Court of Appeals concluded that the instruction given to the jury that required the accused to have "*caused*" a person to engage in sex during the commission of an underlying felony would establish a "causal connection between the felony and the sex act" and "insure that an accused will not be convicted for engaging in

5

purely consensual sex." *Id.* ¶ 24. The Court held that "the legislature intended to punish those who participate in certain sexual activity, even without force or coercion, when the . . . sex act is caused by the defendant in the commission of any other felony," that the underlying statutory felony need not be a felony with any "element of force or coercion," and that causation between the felony and the sex could even be unintentional or accidental. *Id.* ¶¶ 25-26. Nothing in *Maestas* considered the significance of the basic definition of criminal sexual penetration in Section 30-9-11(A) (2003), requiring the penetration to be both "unlawful and intentional."

{19}   Although this Court granted certiorari to consider the proper interpretation of the elements of CSP II-felony, we reversed the defendant's convictions in *Maestas II* without reaching that issue after the Attorney General candidly conceded that the Legislature expressly excluded judges from application of the Governmental Conduct Act, removing any predicate felony that could arguably support a conviction of CSP II-felony. *See Maestas II*, 2007-NMSC-001, ¶¶ 2, 6-7.

{20}   The elements of CSP II-felony were next considered in *State v. Moore*, 2011-NMCA-089, 150 N.M. 512, 263 P.3d 289, *cert. denied*, 2011-NMCERT-008, 268 P.3d 513. The Court of Appeals panel that decided *Moore* was not the same panel that decided *Maestas*. *Moore* was an appeal by the state from a district court dismissal of an indictment for failure of the state to instruct the grand jury that lack of consent was an element of the criminal sexual penetration of a fourteen-year-old child victim who had been supplied with marijuana by an adult defendant. *See Moore*, 2011-NMCA-089, ¶¶ 3, 6. Unlike *Maestas*, *Moore* squarely addressed the importance of the fact that "CSP II incorporates the same universal definition of criminal sexual penetration in Section 30-9-11(A), including the requirement that the act be unlawful," but concluded that the unlawfulness element was established where the victim was "a statutorily defined child" whose consent was irrelevant to the unlawfulness of the sex. *Moore*, 2011-NMCA-089, ¶ 13. *Moore* specifically relied on prior case law holding that "the consent of a child between the ages of thirteen and sixteen is legally irrelevant for both CSP III, where force is required, and CSP IV, where force is not required." *Id.* Distinguishing the situation from that involving an adult victim where consent may be an issue, the court reversed, holding that there was no need to include language referring to consent "in the definition of unlawfulness for CSP II and CSP IV in a case involving an alleged victim that was a statutorily defined child." *Id.* ¶¶ 19-20. *Moore* did not overrule or expressly disapprove of the more expansive interpretation in *Maestas*, citing it with approval as additional support for reversing the district court. *Moore*, 2011-NMCA-089, ¶ 14.

{21}   The Court of Appeals opinion in this case includes a brief acknowledgment of the unlawfulness component of the basic statutory definition of criminal sexual penetration: "The description of the sexual conduct [in the elements instruction for CSP II-felony] that Defendant caused her daughter . . . , a thirteen-year-old girl, to give fellatio to an adult male, was sufficient to satisfy the unlawfulness element." *Stevens*, No. 29,357, mem. op. at 9. But, as with *Moore*, the Court of Appeals in *Stevens* also cited *Maestas* with approval: "Since our

6

Supreme Court [in *Maestas II*] did not address these issues [of unlawfulness in its reversal of *Maestas* on other grounds], this Court's opinion remains the applicable, controlling law in New Mexico with regard to them." *Stevens*, No. 29,357, mem. op. at 9. The Court of Appeals concluded that the requirement of the elements instruction that the sex occurred during the commission of a felony was, in the language of *Maestas*, "'enough to insure that an accused will not be convicted for engaging in purely consensual [i.e., lawful] sex.'" *Stevens*, No. 29,357, mem. op. at 8-9 (alteration in original). *Stevens* provided no explanation for its bracketed language equating lawful sex with consensual sex or for how, in the elements instruction, the requirement of the concurrent timing of a felony and a sex act would insure that a person would not be convicted for engaging in purely consensual and lawful sexual activity.

**{22}** We now face the statutory construction issue that we did not reach in our *Maestas II* opinion vacating the conviction in *Maestas*. As always, we start with an examination of the statutory text. The description of the offense of criminal sexual penetration during the commission of a felony is deceptively simple. Section 30-9-11(E)(5) (2007) defines it as "criminal sexual penetration perpetrated . . . in the commission of any other felony." And what is the punishable "criminal sexual penetration" that becomes an elevated offense if perpetrated in the commission of another felony? Section 30-9-11(A) (2007) provides the only statutory definition: "Criminal sexual penetration is the unlawful and intentional causing of a person to engage in sexual [acts]." *Maestas* acknowledges this definition but never addresses the significance of the modifying word "unlawful," stating simply that the basic criminal sexual penetration "definition says nothing about force or coercion; instead, it speaks in terms of 'causing' a person to engage in a sex act." *Maestas*, 2005-NMCA-062, ¶ 18.

**{23}** Actually, the statute defines "criminal" sexual penetration as, among other things, the "unlawful" causing of a person to engage in a sex act. Otherwise, the description of CSP II would have omitted the term "criminal" and simply described the offense as "sexual penetration perpetrated . . . in the commission of any other felony." This Court has repeatedly cautioned that the statutory term "unlawful" has significance in determining legislative intent and defining elements of offenses. *State v. Osborne*, 1991-NMSC-032, ¶ 33, 111 N.M. 654, 808 P.2d 624 (holding that "by defining [criminal sexual contact of a minor] as 'unlawfully and intentionally' touching a child's intimate parts the legislature properly intended that the state must establish the unlawfulness of the touching as a distinct element of the offense"); *see State v. Parish*, 1994-NMSC-073, ¶¶ 1, 12, 118 N.M. 39, 878 P.2d 988 (reversing a homicide conviction for failure to instruct the jury on the statutory element of unlawfulness and holding that a "jury instruction which does not instruct the jury upon 'all questions of law essential for a conviction of any crime submitted to the jury' is reversible error" (citation omitted)). Recognizing the independent significance of the statutory modifier "unlawful" is a principle that has been honored since the earliest days of our territorial justice system. *See Territory v. Miera*, 1866-NMSC-004, ¶¶ 2, 5, 1 N.M. 387 (holding an assault indictment defective for failure to allege that a beating was administered unlawfully, emphasizing that "[b]y using the word 'unlawfully' in the statute, the legislature

7

intended to discriminate between acts of violence which may be lawful and those which are not").

**{24}** Like the Court of Appeals, we have struggled with trying to determine legislative intent by simply parsing individual words and phrases of the criminal sexual penetration statute. But unarticulated assumptions of legislators and unanticipated applications faced by the judicial branch often require that we search more deeply for legislative intent, to avoid the danger in the law, as in life, of not seeing the forest for the trees. Because neither the briefs of the parties in this case nor the opinions construing the statute have provided any analysis of the origins or purpose of the offense of CSP II-felony, we have found it necessary to do so on our own. *See State v. Morales*, 2010-NMSC-026, ¶ 13, 148 N.M. 305, 236 P.3d 24 (observing that to determine legislative intent, we must consider not only statutory language and structure but also legislative history and motivating policies). We begin our analysis with a historical review of the evolution of our criminal sexual penetration statutes.

**{25}** The common law from which Anglo-American sexual assault crimes originated traditionally focused on forcible or nonconsensual intercourse, but "from ancient times the law has afforded special protection to those deemed too young to understand the consequences of their actions." *United States v. Ransom*, 942 F.2d 775, 777 & n.2 (10th Cir.1991), *cert. denied*, 502 U.S. 1042 (1992) (quoting Blackstone's Commentaries for the proposition "that by the year 1275 the law in England prohibited 'carnally knowing and abusing any woman child under the age of ten years; in which case the consent or non-consent is immaterial, as by reason of her tender years she is incapable of judgment and discretion'" (citation omitted)). A review of the Model Penal Code, which contains no suggested offense involving criminal sexual penetration during the commission of a felony, indicates the same approach to criminalizing imposition of sex acts on unwilling victims or those not deemed to be in a position to provide a free and lawful consent. *See* Model Penal Code § 213, *Sexual Offenses*, 10A U.L.A. 432 (2001).

**{26}** New Mexico's first territorial statutes contained only one sex crime: "If any person shall unlawfully have carnal knowledge of any woman by force and against her will, he shall, on conviction thereof, be castrated or imprisoned not exceeding ten years, or fined not exceeding one thousand dollars." 1846 Kearny Code of Laws, *Crimes and Punishments*, art. II, § 2. In 1854, the Territorial Legislature added the common law offense of statutory rape involving sex with a child below the age of lawful consent, punishing by "imprisonment . . . for life" anyone who "shall unlawfully and carnally know and abuse any female child under the age of ten years." 1853-54 N.M. Laws, Act 28, ch. III, § 34.

**{27}** In the century and a half of New Mexico's existence as a territory and a state, the Legislature has made various amendments to our sexual assault laws, but it has never deviated from the common law approach of criminalizing only those sex acts that are perpetrated on persons without their consent, either as a matter of fact or, in the case of children or other vulnerable victims, as a matter of law. *See, e.g.*, 1963 N.M. Laws, ch. 303, § 9 (enacting a new criminal code and providing punishments for sexual intercourse with

children under the age of sixteen years, Subsection 9-3, and for intercourse with a victim "without her consent" when her resistance is forcibly overcome, she is unconscious or physically unable to resist, she is incapable of giving consent because of a mental disability, or when she has been plied with resistance-impairing substances, Subsection 9-2).

**{28}** The sexual penetration during commission of a felony offense was first enacted as part of a complete restructuring of the New Mexico sexual assault laws in 1975, prompted by widespread concerns locally and nationally about the discriminatory aspects of many features of our traditional rape laws. *See* R. Bruce Washburn, *Rape Law: The Need for Reform*, 5 N.M. L. Rev. 279, 279 & nn.1-4 (1975) (describing the 1975 enactment in historic perspective); Charles W. Daniels, *The Impact of the Equal Rights Amendment on the New Mexico Criminal Code*, 3 N.M. L. Rev. 106, 112-14 (1973) (arguing for statutory reform to protect male as well as female victims and punish female as well as male criminal acts). Although there is no written New Mexico legislative history, the new statutes were clearly part of a national trend, influenced in part by the ground-breaking Michigan Sexual Conduct Act, the result of several years of drafting and lobbying efforts by the Michigan Women's Task Force on Rape. *See* W. Patrick Dreisig, Note, *Criminal Law—Sexual Offenses—A Critical Analysis of Michigan's Sexual Conduct Act*, 23 Wayne L. Rev. 203, 204 n.8 (1976) (indicating that 28 states, including New Mexico, revised their rape laws).

**{29}** One of the authors of the 1975 Michigan Criminal Sexual Conduct Act was prosecutor Patricia Boyle, who later went on to serve as a justice of the Michigan Supreme Court. *See* Ann Zaniewski, *Patricia Boyle: Former Michigan Supreme Court justice dedicated to public service*, Detroit Free Press, Jan. 15, 2014, at A5 (citing, in Justice Boyle's obituary, her role in helping to draft the landmark legislation). In an article contemporaneous with the Michigan legislation, Justice Boyle discussed the statute she said had been "specifically designed to comprehensively codify and define sexual crimes, rationally relate penalties to the harmfulness of the conduct and encourage reporting and prosecution of sexual offenses by victims." Patricia Boyle, *The Criminal Sexual Conduct Act*, 43 Detroit Lawyer at 6 (October 1975). The 1975 Michigan act created a new offense of sexual penetration that "occurs during the commission of another felony." Boyle, 43 Detroit Lawyer at 8; *see also* Mich. Comp. Laws Ann. § 750.520b(1)(c) (West 2014) ("A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . [s]exual penetration occurs under circumstances involving the commission of any other felony."). Despite the fact that the Michigan Legislature, unlike the New Mexico Legislature, did not insert the modifiers "criminal" or "unlawful" before the term "sexual penetration," it was clear that the intent of the drafters was to punish criminal sexual conduct "achieved by 'force or coercion': broadly defined to include not only actual force but submission due to the presence of a weapon, threats to use force, or . . . threats to retaliate in the future." Boyle, 43 Detroit Lawyer at 9. The goals of the Michigan act were "to alter the attitudes of the public and the criminal justice system toward the offense, the offender, and the victim." *Id.* at 11.

The conduct prohibited is assaultive conduct against the sexual privacy of

9

another person, as opposed to the prior prohibition against unauthorized eroticism. The offense is the invasion of that privacy by force, coercion, or other undue advantage. . . . The[] goals . . . will be accomplished only to the extent that those charged with responsibility for enforcing and interpreting the Act, that is, police, prosecutor, trial and appellate benches, understand and apply the Act in light of the legislative purpose.

*Id.*

**{30}**   Despite the lack of textual specificity in the Michigan act, Michigan courts have recognized their "duty to give a reasonable statutory construction to the statute to prevent the entire statute from being rendered unconstitutional" and to avoid applying a serious criminal statute in "'ridiculous' circumstances." *People v. Lockett*, 814 N.W.2d 295, 301-02 (Mich. Ct. App. 2012) (summarizing precedents and upholding conviction where there was a direct relationship between the sexual penetration and the felony of providing sexually explicit material to a minor and where the victim of the felony was also the victim of the sexual penetration).

**{31}**   Our review of the statutes of all 50 states shows that the vast majority of other states, even those that have patterned their statutes after the Michigan Criminal Sexual Conduct Act, never followed Michigan's lead in creating a separate offense of sexual penetration during the commission of a felony. Of the very few states that adopted any sexual offenses enhanced by commission of a separate felony, all have statutory language or court interpretations that clarify that the victim must be forcibly or otherwise nonconsensually the subject of the defendant's sexual conduct.

**{32}**   Definitional elements of the Delaware statute include that "[t]he sexual intercourse occurs without the victim's consent and it was facilitated by or occurred during the course of the commission or attempted commission of . . . [a]ny felony." Del. Code Ann. tit. 11, § 773(a)(2)a (West 2010).

**{33}**   The Illinois statute defining aggravated criminal sexual assault requires that the defendant commit both the predicate felony and a criminal sexual assault. *See* 720 Il. Comp. Stat. Ann. 5/11-1.30(a)(4) (West 2011) (enhancing the penalties for criminal sexual assault perpetrated during the commission of a felony); 720 Il. Comp. Stat. Ann 5/11-1.20(a) (West 2011) (defining the base crime of criminal sexual assault as sexual penetration by force or threat of force, when the victim is unable to give knowing consent, or when the victim is a minor); *People v. Cox*, 557 N.E.2d 288, 295 (Ill. App. Ct. 1990) (observing that a conviction for aggravated criminal sexual assault of an adult victim required both commission of the predicate felony and "an act of sexual penetration by the use of force or threatening the use of force").

**{34}**   The New Jersey statutes involving sexual assaults during commission of a felony require both an act of sexual penetration using "physical force or coercion" and a predicate

felony limited to "robbery, kidnapping, homicide, aggravated assault on another, burglary, arson or criminal escape." *See* N.J. Stat. Ann. § 2C:14-2c(1) (West 2012) (requiring the use of force or coercion for the sexual assault crime); N.J. Stat. Ann. § 2C:14-2a(3) (enhancing the penalties for sexual assaults committed during commission of the specified felonies); *State v. Drury*, 919 A.2d 813, 824 (N.J. 2007) (holding that the felony of carjacking does not qualify as a statutory predicate offense).

**{35}** South Carolina law provides enhanced penalties if a "sexual battery" is inflicted on a "victim of forcible confinement, kidnapping, trafficking in persons, robbery, extortion, burglary, housebreaking, or any other similar offense or act." *See* S.C. Code Ann. § 16-3-652(1)(b) (2010).

**{36}** The Washington statute defining rape during commission of a felony requires penetration by "forcible compulsion" with severe limitations on the nature of the predicate felony, which may be either kidnapping of the rape victim or felonious entry into the building or vehicle where the rape victim is located. *See* Wash. Rev. Code Ann. § 9A.44.040(1) (West 1998).

**{37}** "While looking to similar state statutes cannot conclusively answer the question of what actions our own Legislature meant to proscribe," we have recognized that comparisons can be "instructive" in understanding legislative intent. *State v. Tafoya*, 2012-NMSC-030, ¶ 23, 285 P.3d 604 (analyzing statutes of other states in construing the legislative purpose of the New Mexico drive-by shooting statute). It is significant that no other American jurisdiction has been willing to impose sexual assault convictions on adults with the capacity to consent who engage in otherwise lawful sexual activity simply because the sex occurs at the same time as or can be said to have been facilitated or caused by the commission of a felony offense. In the case before us, for example, such a broad interpretation would have supported convicting both Defendant and her adult boyfriend of CSP II-felony for having consensual relations with each other after they became euphoric from using illegal drugs. Because marital status is now irrelevant to culpability for modern criminal sexual penetration, a conviction for CSP II-felony could be imposed against a married or single couple, each adult causing the other to have mutually consensual intercourse while either participant is operating an unlawful gambling enterprise, *see* NMSA 1978, § 30-19-3 (1963); or neglecting a nursing home resident, *see* NMSA 1978, § 30-47-5(B) (1990); or retaining stolen property, *see* NMSA 1978, § 30-16-11(F) (2006); or practicing dentistry without a license, *see* NMSA 1978, § 61-5A-18(A) (2003); or any of the multitude of felonies that the New Mexico Statutes punish as felonies, most having nothing to do with coercive sexual behavior.

**{38}** Like the Michigan court in *Lockett*, we recognize our judicial responsibility to avoid ridiculous applications of the law by construing ambiguous statutes in a way that will "harmonize all relevant statutory provisions and avoid absurd results." *State ex rel. Children, Youth & Families Dep't v. Marlene C.*, 2011-NMSC-005, ¶ 15, 149 N.M. 315, 248 P.3d 863. Section 30-9-11(G) criminalizes sexual conduct perpetrated on children under the age of

lawful consent, and Section 30-9-11(F) criminalizes criminal sexual penetration accomplished "through the use of force and coercion." NMSA 1978, Section 30-9-10(A) (2005) defines "force and coercion" as including not only physical force but also threats of future force or retaliation, intercourse with mentally or physically vulnerable victims, and consensual or nonconsensual penetration of a patient by a psychotherapist. There is an obvious and consistent thread in the New Mexico criminal sexual penetration statutes that is consistent with both New Mexico sexual offense history and with the law of all other American jurisdictions, punishing imposition of sexual activity on those who are not willing participants in fact or in law, and there is nothing in our statutes or their history that articulates or even implies any legislative intent to deviate from that fundamental concept.

{39} We conclude that more than a simple temporal or causal relationship is necessary to honor the legislative intent underlying the criminal sexual penetration statutes, criminalizing sexual acts perpetrated on persons without their consent, either as a matter of fact or, in the case of children or other vulnerable victims, as a matter of law. Our interpretation is guided not only by the kinds of offenses described in the statute but also by the history of criminal sexual assault laws and by the recognition that sexual intercourse involving consenting adults is not only a normal, desirable, and biologically essential human activity but is also a fundamental constitutional liberty. *See Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (holding that the choice of consenting adults to engage in intimate physical relationships is a form of liberty protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, regardless of the marital status or sexual preference of the participants). We therefore hold that when a CSP II charge is based on the commission of a felony, it must be a felony that is committed against the victim of, and that assists in the accomplishment of, sexual penetration perpetrated by force or coercion or against a victim who, by age or other statutory factor, gave no lawful consent.

{40} *Maestas* suggested that our jury instruction on the elements of CSP II-felony—requiring the jury to find in element number one that the defendant caused a person to engage in a sex act and in element number two that the defendant committed that act "*during* the commission of" a felony—"constitute[s] a requirement that there be a causal connection between the felony and the sex act." *Maestas*, 2005-NMCA-062, ¶ 24; *see* UJI 14-954 NMRA (including as elements number one and two the identical two elements applicable to *Maestas* before an amendment adding the unlawfulness element to the instruction became effective in 2005). *Moore* followed the reasoning of *Maestas* in holding that the jury need not be instructed that the sex act must be unlawful in a case where the victim supplied with drugs by a defendant is in fact a child below the age of consent. *Moore*, 2011-NMCA-089, ¶ 13. While a properly instructed jury in both *Maestas* and *Moore* might well have been justified in finding both unlawfulness in the sexual activity and a causal link between felonies committed against the victim and the resulting unlawful sex acts, the fact is that the juries were not called on to make any of those findings. And the law is clear that the Sixth Amendment right to trial by jury guarantees that all facts essential to a defendant's sentence must be determined by a jury, whether or not a judge or panel of judges might think those facts were proved in a particular case. *See State v. Frawley*, 2007-NMSC-057, ¶¶ 3-5,

12

12-13, 143 N.M. 7, 172 P.3d 144 (relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and holding unconstitutional a provision of the Criminal Sentencing Act which allowed a trial judge to increase a defendant's basic sentence by up to one-third upon a finding of certain aggravating circumstances). Accordingly, we request that our Uniform Jury Instructions Committee for Criminal Cases recommend amendments to our jury instructions to clarify the elements juries must consider before returning verdicts for CSP-felony.

**{41}** We now turn to the issue whether the deficiency in the elements instructions in this case constituted fundamental error that requires reversal despite Defendant's failure to object or otherwise preserve the error at trial.

**B.      There Was No Fundamental Error in the Circumstances of This Case**

**{42}** We review an unpreserved challenge to a jury instruction for fundamental error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (distinguishing the reversible error standard of review for a preserved challenge to a jury instruction from the fundamental error standard of review for an unpreserved challenge). "'Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand.'" *State v. Cunningham*, 2000-NMSC-009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (citation omitted). A "trial court's error in failing to instruct on an essential element of a crime for which defendant has been convicted, where there can be no dispute that the element was established, therefore does not require reversal of the conviction." *State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146.

**{43}** In convicting the Defendant of CSP II-felony in this case based on the instructions actually given, a unanimous jury necessarily rejected Defendant's alibi defense and found beyond a reasonable doubt that Defendant on two occasions had caused her adult boyfriend to sexually penetrate her daughter during the commission of the felony of distribution of a controlled substance to a minor.

**{44}** There could also have been no doubt about the elements missing from the instruction, the unlawfulness of the sexual penetration, and the fact that the penetration was a result of the commission of a felony. The sexual penetration was unlawful by the explicit terms of Section 30-9-11(G)(1) (2007), which criminalizes sexual relations between a child thirteen to sixteen years of age and a person who is at least four years older. In her brief in chief before this court, Defendant candidly acknowledged that Defendant's daughter was thirteen years old at the time of the events in this case and Defendant's boyfriend was at least ten years older. The daughter's equivalent testimony at trial went unchallenged by the defense.

**{45}** Also unchallenged was the daughter's testimony that it was after she had been injected with methamphetamine that she acquiesced to her mother's direction to perform oral sex on the adult boyfriend because, in her words, she "was, like, high" and "didn't really care," establishing the nexus of causation between the commission of the felony against the daughter and the resulting unlawful sex act committed on the daughter. This case therefore

13

exemplifies the kind of situation in which a preserved challenge to an instruction might have resulted in reversal but in which the reviewing court, in the absence of a preserved challenge, does not consider guilt to be so doubtful that a conviction would shock the judicial conscience. *See Orosco*, 1992-NMSC-006, ¶ 12, (reviewing cases in which convictions were affirmed despite omission of an essential element from the jury instructions). In *Orosco*, we rejected claims of fundamental error and affirmed convictions for sex offenses committed on children, despite the erroneous failure of the jury instructions to require findings that criminal sexual contact must be unlawful as well as intentional. *Id.* ¶¶ 3, 5, 20. We observed that the jury necessarily found that the defendants had fondled the genitals of the children in the restroom of a bar and in a defendant's truck, and there was no issue as to whether the disputed "touchings, if they occurred, were other than unlawful." *Id.* ¶¶ 9, 11.

**{46}** We similarly conclude that the deficiencies of the jury instructions in this case did not rise to the level of fundamental error. There is simply no issue as to whether the acts of injecting a thirteen-year-old child with methamphetamine and then causing her to participate in fellatio with an adult, both found by the jury to have occurred, were, in the words of *Orosco*, "other than unlawful."

**C.    The Amended Date Description Did Not Prejudice Defendant**

**{47}** We also address Defendant's argument that she was unfairly prejudiced in her defense against all of the charges because the district court allowed the State to change the description of the dates of the alleged offenses after Defendant had prepared and presented an alibi defense.

**{48}** Rule 5-204(C) NMRA of the Rules of Criminal Procedure for the District Courts provides that

> [n]o variance between those allegations of a complaint, indictment, information or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant unless such variance prejudices substantial rights of the defendant. The court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence. If the court finds that the defendant has been prejudiced by an amendment, the court may postpone the trial or grant such other relief as may be proper under the circumstances.

**{49}** "We review a district court's interpretation and application of Rule 5-204 de novo." *State v. Branch*, 2010-NMSC-042, ¶ 19, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 & n.6, 275 P.3d 110.

**{50}** A criminal indictment or information need not contain exacting detail as long as the defendant is given sufficient notice of the charges. *See State v. Cawley*, 1990-NMSC-088,

¶ 13, 110 N.M. 705, 799 P.2d 574 (recognizing the right of the accused to be apprised of the charge against him and also recognizing that not all charging documents need to establish the time or date of the offense); *see also State v. Baldonado*, 1998-NMCA-040, ¶¶ 18-21, 124 N.M. 745, 955 P.2d 214 (recognizing the need to reconcile a defendant's "due process right to reasonable notice of the charges" and the difficulty faced by the state in prosecuting criminal sexual charges committed against children who often have a difficult time remembering precise dates of crimes that may have been committed against them); *accord* Rule 5-205(A)(1) NMRA ("It shall be unnecessary for a complaint, indictment or an information to contain the [time of the commission of the offense] unless such allegations are necessary to give the defendant notice of the crime charged.").

**{51}** In *Branch*, this Court affirmed a district court decision to allow the state to amend the indictment in a murder trial after the state had presented its evidence. 2010-NMSC-042, ¶¶ 18, 26. The amendment added two predicate felonies to the charge of felony murder in a case involving multiple charges for crimes against multiple victims that arose from the defendant's running over his girlfriend with his truck and also running down several people who had stopped to give her assistance, ultimately killing one. *Id.* ¶¶ 2-4, 21-22. The defendant argued that he was prejudiced by the change because his preparation and cross-examination might have progressed differently based on the additional predicate felonies. *Id.* ¶ 21. *Branch* rejected the defendant's argument, stating that the defendant's "mere speculation of how he would have conducted his defense differently does not rise to the level of prejudice that is required for an acquittal." *Id.* The *Branch* Court also explained that the variance allowing two of the original charges to be used as additional predicate felonies in felony murder did not prejudice the defendant's substantial rights because the conduct underlying these additional predicate felonies was the same as the conduct underlying one of the predicate felonies in the original felony murder charge, providing the defendant with adequate notice by which he "could 'reasonably anticipate from the indictment what the nature of proof against him [would] be.'" *Id.* ¶ 22 (alteration in original) (citation omitted).

**{52}** In *State v. Dombos*, the Court of Appeals affirmed the district court's decision to allow an amendment expanding the time frame of the charges in order to conform with evidence presented at trial. *See* 2008-NMCA-035, ¶¶ 24-25, 143 N.M. 668, 180 P.3d 675. The original indictment charged the defendant with numerous crimes stemming from several sexual offenses against his wife that occurred in February 2004 after the two married and moved to Alamogordo. *See id.* ¶¶ 1-2, 6. The original charges alleged that one count each of kidnapping, battery, and criminal sexual penetration occurred on or between February 9, 2004, and February 18, 2004; and another set of counts in the amended indictment alleged that each of those crimes again occurred on or about February 19, 2004. *Id.* ¶ 24. Partway through the trial, the state moved to enlarge the time period to allow that the two sets of events occurred at some time between February 1 and February 20. *See id.* ¶¶ 3, 24. Although the defendant argued that the change was unfairly prejudicial, the *Dombos* Court held that the defendant did not assert any specific claim of prejudice. *See id.* ¶ 26. Rather, the *Dombos* Court explained that the defendant did not rely on the specific time frame in his defense and that he "knew the nature of the charges and knew the identity of the victim. He

15

also knew that all the charges were alleged to have occurred during the period of time [the defendant and his wife] lived together." *Id.*

**{53}**　In this case, Defendant argues that she was prejudiced by the amended date description because of her reliance on an alibi defense at trial. There are several flaws in this argument.

**{54}**　Most fundamentally, the information never alleged precise dates of the multiple crimes charged. To the contrary, it generally alleged that all of the offenses occurred "on or about November 12, 2007." From the outset, Defendant and her counsel were on notice that the daughter could not say precisely when the events occurred. In the affidavit for Defendant's arrest warrant, the investigating officer stated, "I asked [the daughter] if she knew an approximate date of the incident and she said no but that it was after Halloween but before Thanksgiving." The State's pretrial alibi notice demand referred to the offenses as allegedly occurring, in the general terms of the criminal information, "on or about . . . November 12, 2007," and Defendant's responsive alibi notice recited that her anticipated alibi defense would cover "the time the alleged offenses were committed as charged in the Criminal Information." Neither the daughter's trial testimony that the incidents must have occurred shortly before Halloween, which was October 31, nor the amendment to the date description in the information to conform to the daughter's testimony went beyond the time frame fairly described in the original charges.

**{55}**　In addition, like the defendant in *Dombos* who was on notice that the alleged crimes occurred during the time he was living with his new wife in Alamogordo, Defendant was on notice that the events at issue in this case were alleged to have occurred sometime in the fall of 2007 when Defendant was going through a divorce and when Defendant, her daughter, and the boyfriend all lived in the Aztec area.

**{56}**　Finally, the defense specifically knew of the daughter's revised date estimates as soon as the daughter testified in the State's case in chief, before the defense made its reserved opening statement and before it began presenting its incomplete alibi evidence. The State's later request to amend the charges to conform to the evidence, as permitted by Rule 5-204, could not have been a surprise to the defense. The defense made no objection to the daughter's testimony, no claim of prejudice from her corrected recollection before the beginning of the defense case, and no request for a continuance or such other relief as would be appropriate when a defendant is actually prejudiced by an amendment. *See State v. Marquez*, 1998-NMCA-010, ¶ 21, 124 N.M. 409, 951 P.2d 1070 ("The remedy afforded for prejudice by an amendment is to 'postpone the trial or grant such other relief as may be proper under the circumstances.'" (quoting Rule 5-204(C))). Instead, the defense affirmatively used the daughter's uncertainty about the precise dates to attack her credibility, both on cross-examination and in closing argument.

**{57}**　Accordingly, we conclude both that Defendant was not prejudiced by the amended date description and that Defendant waived any claim of prejudice when she failed to request

16

an opportunity to respond further to the daughter's testimony or seek other relief from the district court and instead attempted to exploit the daughter's uncertainty about the dates. We affirm the Court of Appeals and hold that the State's variance between the charging information and jury instructions was proper under Rule 5-204(C).

## IV.    CONCLUSION

**{58}**    Although we conclude that the jury instructions on the elements of CSP II-felony were inadequate, we hold that the deficiency did not result in fundamental error in the circumstances of this case, where the sexual activity with Defendant's thirteen-year-old child was undeniably criminal sexual penetration during and resulting from the commission of a felony. Finding no other error, we affirm all of Defendant's convictions.

**{59}    IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _State v. Stevens_, No. 32,860**

**APPEAL AND ERROR**
Fundamental Error
Standard of Review

**CRIMINAL LAW**
Child Abuse and Neglect
Contributing to the Delinquency of a Minor
Controlled Substances
Criminal Sexual Penetration
Sexual Offences

17

**CRIMINAL PROCEDURE**
Alibi

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction